UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| SHANON MIDDLETON | ) | CASE NO: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | Complaint |
| vs. | ) | |
| | ) | |
| | ) | |
| UNITED STATES POSTAL | ) | |
| SERVICE and LOUIS DEJOY, | ) | |
| POSTMASTER GENERAL, PAM | ) | |
| BONDI ATTORNEY GENERAL | ) | |
| AND BROOK B. ANDREWS | ) | |
| UNITED STATES ATTORNEY | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## EMPLOYMENT CASE

1. Plaintiff, Shanon Middleton (hereinafter referred to as "Plaintiff"), brings this action to seek redress against the Defendant, United States Parcel Service and Louis DeJoy, Postmaster General in his official capacity (hereinafter referred to as "Defendant" "USPS") for damages sought against her pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000(e) (hereinafter "Title VII"), The Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12101 et. seq., and the state law of South Carolina, respectfully and avers as follows:

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Sections 2000e(5) and 12101, this being a proceeding to enforce rights and remedies secured under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. 2000e et. seq. and The Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12101 et. seq. This court also has pendent and supplementary jurisdiction over so much of this action as is based on state law.

3. Venue is proper in the Columbia Division because the Causes of Action arose therein, the acts and practices complained of occurred there and it is where the Defendant does business and may be found.

## PARTIES

4. Plaintiff is an African American male citizen of the United States and resides in Columbia, South Carolina. Plaintiff began his employment with Defendant in April of 2020 as a Mail Handler Assistant.

5. Defendant USPS is an independent establishment of the executive branch of the United States government that is a package delivery company and does business throughout the State of South Carolina.

6. Defendant Louis DeJoy is the Postmaster of Defendant USPS.

7. Defendant Pam Bondi is the Attorney General of the United States.

8. Defendant Brook B. Andrews is the United States Attorney for the District of South Carolina.

9. Upon information and belief, Defendant is an employer under Title VII and employs in excess of fifteen (15) employees

## CONDITIONS PRECEDENT

10. The Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below.

    a. On January 5, 2024, Plaintiff filed a claim with the United States Merit Systems Protection Board (MSPB).

    b. On or about January 29, 2024, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC").

    c. In November 2024, Plaintiff was issued a Notice of Right to Sue from the EEOC.

    d. On December 13, 2024, Plaintiff filed a second claim with MSPB pursuant to the EEOC Notice of Right to Sue.

    e. On February 3, 2025, Plaintiff was issued a Notice of Right to Sue from the EEOC.

    Plaintiff has timely filed the foregoing action within thirty (30) days of the date on which he received the Notice of Right to Sue described in paragraph 7(b).

## FACTUAL ALLEGATIONS

11. On or about April 2020, Plaintiff began his employment with Defendant as a Mail Handler Assistant at Defendant's Dixiana Road, West Columbia, South Carolina location.

2

12. Plaintiff asserts that he is a veteran of the United States Army, serving eight years and three deployments before he left the service in 2011.

13. Plaintiff indicated his veteran status on his application with Defendant.

14. Plaintiff also asserts that his application with Defendant indicated that he has a disability, in which he received points towards his hiring assessment as an accommodation for being a disabled veteran.

15. Upon information and belief, the plaintiff has been treated for Post-Traumatic Stress Disorder (PTSD) and Attention Deficit Hyperactive Disorder (ADHD).

16. At all times during the course of his employment, Plaintiff performed his job duties well, adhered to safety policies, and was an exemplary employee.

17. On or about March 2021, Plaintiff converted into a career employee and obtained the Mail Handler position.

18. On or about January 2023, Plaintiff began a consensual, romantic relationship with Ms. Blackmon, a supervisor who worked on a different shift than Plaintiff.

19. Plaintiff asserts that his relationship with Ms. Blackmon did not impact his employment until he decided to end the relationship and requested Ms. Blackmon to cease contact with him in September 2023.

20. Upon information and belief, Ms. Blackmon began a pattern of harassing the plaintiff following their breakup, to include spreading gossip about his mental health at work.

21. Due to ongoing concerns of harassment and gossip at work, Plaintiff asserts that he filed a protected complaint with Defendant's agents against Ms. Blackmon.

22. Plaintiff states that the harassing conduct negatively impacting his work life, yet agents of Defendant failed to investigate or take seriously his complaint because of his sex.

23. Plaintiff asserts that, on or around September 10, 2023, he emailed the defendant's Union Branch President, Ms. Sas, with his concerns and included photo support of his claims but was told he did not have enough evidence to file a grievance, and his complaint was not investigated.

24. Because of his sex and disability, Plaintiff was denied grievance rights and endured additional harassment, gossip, and ridicule.

25. On or around October 2023, Defendant hired Ms. Richard, a new female employee.

26. Plaintiff asserts that he was warned by supervisors to include Senior Manager of Distribution Operation, Flamur Berisha, and Assistant Supervisor Dylan McElroy, to "stay away" from Ms. Richard.

27. Upon information and belief, Mr. Berisha also warned the female employee to "watch out" for the plaintiff because of his mental health. Plaintiff also asserts that Mr. McElroy made a practice of warning female employees about the plaintiff's mental health.

28. Plaintiff asserts that comments about his mental health were prejudicial, discriminatory, and based, in part, on Ms. Blackmon's harassing and slanderous statements

29. Upon information and belief, the defendant's agents made a practice of isolating employees from Plaintiff, taunting Ms. Blackmon to encourage her further harassment of Plaintiff, and ignoring the targeted, discriminatory acts meted out to the plaintiff because of his disability and sex.

30. On or around October 10, 2023, Plaintiff was called into a meeting with Mr. Berisha, Manager of Distribution Operation Francis Miller, and Shop Steward Sonya Foxworth and learned that he had been accused of harassing Ms. Richard.

31. Upon information and belief, the accusation against the plaintiff were not only false and based in bias against Plaintiff but was also a retaliatory act for his own complaint of harassment.

32. On or around October 16, 2023, Plaintiff emailed Union Branch President Ottaiva Sas about the continued harassment, abuse of authority, and fear of wrongful termination due to the threats he faced from Ms. Blackmon. Again, Defendant failed to grant Plaintiff a grievance or investigation into his protected complaints.

33. Plaintiff had not harassed Ms. Richard, however, because of his sex, he was falsely accused of such by Defendant and Defendant's agents though, upon information and belief, Ms. Richard had not accused him.

34. While the pretextual investigation into false claims against the plaintiff continued, his protected complaints had been denied.

35. Upon information and belief, Defendant could not substantiate claims against Plaintiff, as Ms. Richard stated she had not been, nor had she claimed to have been, harassed by Plaintiff.

36. Upon information and belief, following the conclusion of the fictitious investigation against Plaintiff, agents of Defendant requested to mediate Plaintiff's September claim against Ms. Blackmon in November to placate its wrongdoing.

37. Meanwhile, the ongoing harassment, accusations, gossip, and discrimination caused the plaintiff to endure health issues. Plaintiff asserts that the mental anguish due to the hostile and discriminatory work environment caused him to seek treatment with his medical team.

38. Plaintiff asserts that his treatment included a prescribed dosage increase at least one of his medications.

39. On or around December 5, 2023, Plaintiff states that he felt unwell and eventually passed out outside and was transported from work to the hospital by EMS.

40. Plaintiff asserts that he requested a few days off to recover but, instead was harassed by Defendant's agents including Ms. Blackmon who impersonated Plaintiff's family member and contacted him from an unknown number and Defendant's Branch President Sas who contacted the plaintiff and asked if his medication required a blood or urine test, insinuating that Plaintiff was a drug user.

41. Upon information and belief, the disability and sex-based discrimination Plaintiff endured despite his protected complaints encouraged the defendant's agents to continue their pattern of discrimination, gossip, and unlawful acts against him.

42. Upon information and belief, Plaintiff went to work on December 15, 2023, provided a copy of medical release documentation, and notified Ms. Frasier that Ms. Blackmon called him in her continued display of harassment.

43. Plaintiff asserts that he provided sufficient evidence of his harassment to Ms. Fraiser but she failed to act and, instead, directed Plaintiff to contact the Postal Inspector instead of launching their own internal complaint.

44. Defendant, however, failed to act once again and further retaliated against Plaintiff when they refused to allow him to return to work without another medical release and forbade him from returning to work due to his disability and harassment claim against Ms. Blackmon.

45. Because of the defendant's failure to take Plaintiff's complaints and safety seriously, the plaintiff filed a police report with the Richland County Police Department and was issued a No-Contact Order to protect him from Ms. Blackmon.

46. Plaintiff asserts that, when he went to work to notify his employer of the Order, Mr. Berisha told Plaintiff to not come back and threatened to call the police on him if he came back to work before he was approved to do so.

47. Plaintiff was denied the opportunity to return to work, despite providing hospital release forms.

48. Upon information and belief, to satisfy the discriminatory and pretextual demands of Defendant, Plaintiff was examined and released to return to work by his family doctor and later his VA provider.

49. Despite this, Defendant refused to let Plaintiff return to work.

50. On or around January 16, 2024, while still prohibited by Defendant to rightfully return to work, Plaintiff emailed Ms. Sas the No-Contact Order and a statement in support. Again, defendant failed to file a grievance on his behalf.

51. Upon information and belief, Defendant refused to allow Plaintiff to return to work from December 2023 until April 2024.

52. Plaintiff filed complaints with the Equal Employment Opportunity Commission, South Carolina Office of the Inspector General, Defendant's union, and the MSPB, and was eventually allowed to return to work.

53. As a condition to return to work, and in furtherance of the discrimination towards Plaintiff due to his disability, Defendant required Plaintiff to undergo a Fitness for Duty in March 2024.

54. Upon information and belief, the results of the defendant's pretextual fitness for duty evaluation mirrored the findings of Plaintiff's other medical examinations: a reaction to his medication.

55. Upon information and belief, Plaintiff was returned to work on April 9, 2024.

56. Plaintiff asserts that Defendant has continued to discriminate against him due to his sex and disability to include refusing to promote him but selecting candidates with less experience and/or serious safety concerns.

57. Plaintiff also asserts that he has endured discriminatory comments about his mental health, professionalism, and sexuality on the job. He also asserts the treatment he endured was because of his disability and sex.

58. Plaintiff states that Defendant failed to subject other employees who posed true safety risks continue working despite documented on-the-job accidents, suspected drug use, and misconduct to Fitness for Duty tests and/or adverse employment actions.

59. Upon information and belief, Defendant made a practice of targeting the plaintiff and further retaliating against Plaintiff for raising concerns about safety violations in July 2024.

60. Upon information and belief, Plaintiff first notified Local Union President Sheldon Adams and managers about a safety issue and was assured that the Plant Manager would handle it. Plaintiff asserts that nothing was done to resolve the safety issue.

61. Approximately two weeks later, Plaintiff emailed Defendant's National Union and the OSHA Director on or around July 4, 2024, about the safety issue. As a result of this complaint, Plaintiff states that OSHA reprimanded Defendant.

62. Plaintiff asserts that following his email, a protected complaint, Defendant and its agents increased their discriminatory practices of harassing, retaliating, and ostracizing Plaintiff.

63. Plaintiff asserts that Defendant and its agents revoked his Power Industrial Equipment Record of Certification pretextually as a retaliatory act after he filed a OSHA complaint regarding safety concerns in the workplace.

64. Because of the gender and Defendant's disability-based animus, which was intensified by the OSHA complaint retaliation, Plaintiff was denied opportunities to promote and further endured hostile comments and actions meted by supervisors.

65. Specifically, Plaintiff was denied an acting-supervisor role in November 2024 and was told by the Plant Manager Rodney Laurentius, that he needed to be "more professional and stop dating people in the plant."

66. Upon information and belief, Mr. Laurentius became employed by Defendant while the plaintiff was out of work and had not been employed at the time of Plaintiff's relationship with Ms. Blackmon.

67. Plaintiff asserts that the perception of him being a promiscuous and/or mentally unstable employee is a direct result and act of discrimination based on his sex and disability. The gossip, harassment, bullying, maltreatment, and pretextual adverse actions meted out to the plaintiff by Defendant and its agents has caused him harm.

68. Plaintiff asserts that he had multiple acting supervisor roles with the defendant before he made his protected complaint and before he was refused to return to work by the defendant.

69. Upon information and belief, the defendant has continued to subject Plaintiff to pretextual disciplinary actions such as false claims of harassment as recently as February 2025.

70. On or around February 21, 2025, the plaintiff was searching for equipment in the flats section and Mr. Jamir Snell, a supervisor from a different area, aggressively told him to stay away from the flat area but did not state why.

71. Then, on or around February 23, 2025, Plaintiff was called into a meeting in which Mr. Snell accused the plaintiff of creating a hostile work environment but failed to state how Plaintiff had done such or had been informed of concerns about how he interacted with his colleagues. Again, Defendant attempted to intimidate, harass, and discipline the plaintiff pretextually.

72. Plaintiff asserts that sex and disability discrimination by Defendant prevented the defendant from investigating his claims, subjected Plaintiff to gossip in an unharmonious

work environment, and encouraged defendant and its agents to accuse him of harassment, dating around the job, and being unsafe.

73. Plaintiff asserts that Defendant thoroughly reviews harassment claims made by its female employees. Plaintiff asserts that female employees who make protected complaints were not subjected to the hostile work environment Defendant subjected to Plaintiff.

74. Plaintiff asserts that sex and disability discrimination by Defendant caused Plaintiff to be accused of being mentally ill, unfit to work, unsafe, and unqualified for promotion.

75. As a result of the unlawful discrimination and retaliation that Plaintiff has received, he has been harmed. Plaintiff has no other redress but to file this action.

## FOR A FIRST CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT AND ADA

76. The Plaintiff reiterates and every allegation contained in the preceding paragraphs is as if set forth verbatim herein.

77. Plaintiff repeatedly objected to and protested the violations of his federally protected rights, within the Defendant's administrative structure and the collective bargaining structure, and later to the United States EEOC and MSPB.

78. After the Plaintiff sought relief from Defendant's discriminatory practices for himself to include, but not limited to, complaining through the Union, Defendant retaliated against Plaintiff by a continuance of harassment.

79. Due to the acts of the Defendant, its agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages, and punitive damages.

80. Accordingly, Plaintiff is entitled to compensatory damages in the nature of the value of his lost wages and benefits, front pay, together with interest thereon, as well as liquidated damages, and his reasonable attorney's fees for the bringing of this action.

## FOR A SECOND CAUSE OF ACTION
## SEX DISCRIMINATION / HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE CIVIL RIGHTS ACT

81. The Plaintiff reiterates and every allegation contained in the preceding paragraphs is as if set forth verbatim herein.

82. Plaintiff was subject to adverse terms and conditions by Defendant causing a sexually hostile work environment. Plaintiff was accused of harassing a female employee who denied making such a complaint but had his own complaints about sexual and other harassment against Ms. Blackmon ignored, denied, and rejected.

83. The retaliation, harassment and sexually hostile work environment of the Defendant constitutes a violation of clear mandate of public policy of the state of South Carolina as articulated in the South Carolina Human Rights Act of 1964, as amended (42 USC Sec. 2000e et. seq.)

84. As a result of the racially hostile work environment of the Defendant the Plaintiff has suffered a multitude of problems to include loss of sleep, anxiety, emotional pain and suffering, mental anguish, and humiliation.

85. Accordingly, Plaintiff is entitled to compensatory and punitive damages in the nature of the value of h loss of wages and benefits, front pay, together with interest thereon, as well as attorney's fees for the bringing of this action.

**FOR A THIRD CAUSE OF ACTION**
**DISCRIMINATION/HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA**

86. The Plaintiff reiterates and every allegation contained in the preceding paragraphs is as if set forth verbatim herein.

87. Defendant discriminated against Plaintiff on the basis of his disabilities by refusing to allow him to return to work, humiliating him, encouraging gossip, accusing him of drug use, subjecting him to disparate treatment, and refusing to consider him for promotion and acting supervisory roles, in violation of the ADA.

88. Defendant subjected Plaintiff to a hostile work environment in which Defendant and its agents made unlawful comments, innuendos, and gossip about Plaintiff based on his disabilities and/or their perception of his disabilities.

89. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages due to the defendants acts in violation of state and federal laws.

**FOR A FOURTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF THE ADA**

90. The Plaintiff reiterates and every allegation contained in the preceding paragraphs is as if set forth verbatim herein.

91. Defendant subjected Plaintiff to a hostile work environment based on his disabilities, including but not limited to, ignoring his communications and complaints, refusing his return to work documents, and creating a pretextual basis for his termination.

92. Defendant subjected Plaintiff to a hostile work environment in which Defendant and its agents made unlawful comments, innuendos, and gossip about Plaintiff based on his disabilities and/or their perception of his disabilities.

9

93. Defendant made false statements regarding Plaintiff's safety-risk, health, and ability to perform his job based on his disability and its negative perception of his because of his disability.

94. Defendant retaliated against Plaintiff because of his disability.

95. Defendant subjected Plaintiff to retaliatory treatment due to their perceptions and discriminatory bias against his disability.

96. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages due to the defendants acts in violation of state and federal laws.

## FOR A FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

97. The Plaintiff reiterates and every allegation contained in the preceding paragraphs is as if set forth verbatim herein.

98. Plaintiff and Defendant entered into a binding and valid contract whereby Defendant offered Plaintiff employment in the position of Mail Handler Assistant. Plaintiff accepted the offer of employment and agreed to fulfill the duties of that position in exchange for valuable consideration, his salary.

99. Plaintiff performed his duties with due diligence.

100. Plaintiff was continuing to perform his job duties when he was fraudulently harassed, ignored, and overlooked for promotions multiple times in violation of Defendant's Anti- Retaliation and Anti-Discrimination Policies.

101. Defendant breached its employment contract with Plaintiff, its own policies and procedures, and the progressive discipline procedure as set out by the collective bargaining agreement by harassing Plaintiff.

102. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract as well as that, which is present in the collective bargaining agreement.

103. As a direct and proximate result of Defendant's breach, Plaintiff has suffered actual damages due to the harassment he received in violation of Defendant's policies and procedures.

## **JURY TRIAL DEMANDED**

104. Plaintiff requests a trial by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that this Honorable Court declare that the above listed Defendants' actions complained of herein violated the rights guaranteed to the Plaintiff and issues its judgment:

(1) Declaring the actions complained of herein illegal;

(2) In favor of the Plaintiff and against Defendant for all causes of action in an amount which is fair, just and reasonable, and for compensatory damages;

(3) Issuing an injunction enjoining all Defendants, its agents, employees, successors, attorneys and those acting in concert or participation with all of the Defendant, and at its direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of Title VII of the Civil Rights Act of 1964 as amended, The Americans with Disabilities Act (ADA), 42 U.S.C. Sec. 12101 et. seq., and any other violations;

(4) Awarding Plaintiff actual compensatory damages for each cause of action contained herein, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as a result of sex and disability discrimination and retaliation, Defendant's breach of contract, and breach of contract with fraudulent intent; including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay, travel hardships and travel expenses, and future earnings with cost of living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

(5) Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

(6) Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

RESPECTFULLY BY:

s/Aaron V. Wallace
Aaron V. Wallace (11469)
Wallace Law Firm
1416 Laurel Street, STE B
Columbia, SC 29201
PH 803-766-3997
Fax:839-218-5786

March 24, 2025

11